# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

| | |
|---|---|
| JOEL K. WOOD, )<br>individually and as parent of and next friend )<br>to )<br>WILLIAM THEODORE WOOD, )<br>        )<br>    Plaintiff, )<br>        )<br>v.     )<br>        )<br>GERMANTOWN MUNICIPAL SCHOOL )<br>DISTRICT, )<br>        )<br>    Defendant. ) | Case No. 2:23-cv-02016-JPM-cgc |

## ORDER DENYING MOTION FOR A TEMPORARY RESTRAINING ORDER

Before the Court is Plaintiff Joel K. Wood's "Verified Complaint for Temporary Restraining Order, Injunctive Relief, and Declaratory Judgment," filed on January 13, 2023. (ECF No. 1-1.) Plaintiff moves the Court for a Temporary Restraining Order ("TRO") ordering Defendant, the Germantown Municipal School District ("GMSD") Board of Education ("BOE"), to re-enroll William Wood pursuant to 42 U.S.C. § 1983, the Individuals with Disabilities Act, 20 U.S.C. § 1400 *et seq.*, and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794. (Id. at PageID 6, 11–12.)

For the reasons set forth below, Plaintiff's Motion for a Temporary Restraining Order is **DENIED**.

I.     BACKGROUND

   *A. Factual Background*

   Plaintiff is the parent of high school student William Wood, bringing suit against the GMSD BOE. (ECF No. 1-1.) William is 18 years old[1], a sophomore, and a student with special needs who is diagnosed with autism and speech apraxia. (Id. ¶ 1; ECF No. 16 at PageID 284.) As such, he has an Individualized Education Program ("IEP"). (ECF No. 1-1 ¶ 6.) William was a student at Houston High School, which is operated by the GMSD BOE, from March of 2022 until December 17, 2022, when he was disenrolled for failing to meet the GMSD BOE's residency requirements. (ECF No. 17 at PageID 413; ECF No. 1-1 ¶ 26.) That disenrollment is the basis of this suit.[2]

   Plaintiff and his wife purchased a home located "at 5110 Barry Road, Memphis, TN 38117" (the "Barry Road Residence") in January of 2018. (ECF No. 1-1 ¶ 15; ECF No. 16 at PageID 213.) They remain in possession of this property. (ECF No. 1-1 ¶ 15.)

   In the fall of 2021, William began to attend White Station High School. (ECF No. 16 at PageID 215.) He left that school in January of 2022 when "[h]is assistant resigned." (Id.)

   William was enrolled at Houston High School ("HHS") for the first time in February of 2022. (ECF No. 1-1 ¶ 11.) HHS "staff in the special needs area" were trained in LAMP Words for Life, the communication aid William uses at home. (ECF No. 16 at PageID 310.) At that time, Plaintiff rented a one-bedroom apartment within the GMSD, in which neither he nor William lived. (ECF No. 1-1 ¶ 12; ECF No. 16 at PageID 253–54.) William was disenrolled

---

[1] William was a 17-year-old minor when the Complaint was originally filed. (ECF No. 16 at PageID 181.)
[2] The Court credits the testimony of Plaintiff and his wife that they are striving to provide the best opportunities for William that they can. They are clearly loving parents who have worked with a variety of doctors and therapists, and put in substantial time and effort, to aid William's development as an independent young man. (ECF No. 17 at PageID 298.) It is clear to the Court that these parents truly would do "anything for this kid." (ECF No. 17 at PageID 301.)

for not meeting the GMSD BOE's residence requirements on March 11, 2022. (ECF No. 1-1 ¶ 13; ECF No. 16 at PageID 253.)

In March of 2022, Plaintiff signed a lease for a two-bedroom apartment at 7959 Farnifold Drive, Germantown, Tennessee 38138 (the "Farnifold Apartment"). (ECF No. 16 at PageID 229.) Plaintiff sent an email to Kelly Dodd, a Student Services Supervisor with GMSD, on March 9, 2022, informing the GMSD BOE that he intended to move his entire household into the Farnifold Apartment. (ECF No. 1-1 at PageID 126–27.) At that time, Plaintiff told Kelly Dodd that the Barry Road Residence was on the market. (ECF No. 16 at PageID 257.) Representatives of the GMSD BOE then conducted a home visit and observed the Farnifold Apartment. (ECF No. 1-1 ¶ 17.) Plaintiff also submitted documentation to the GMSD BOE indicating that the Farnifold Apartment was his new residence. (ECF No. 16 at PageID 267–70.) Plaintiff testified at the TRO hearing that, at that time, it was his intent to move to Germantown. (ECF No. 16 at PageID 259.) William was re-enrolled at HHS on March 28, 2022. (ECF No. 1-1 ¶ 18; ECF No. 16 at PageID 271.)

Plaintiff entered into a contract to sell the Barry Road residence in March of 2022. (ECF No. 16 at PageID 272.) In March and April, he also tried to find a new home in Germantown. (ECF No. 16 at PageID 260.) He made no effort to purchase a home in Germantown after that point. (Id.) The contract for the sale of the Barry Road residence subsequently fell through. (ECF No. 1-1 ¶ 15.) Plaintiff did not inform the GMSD BOE that the contract fell through. (ECF No. 16 at PageID 232.) Plaintiff and William have spent every school night save two at the Farnifold residence since William's re-enrollment. (Id. at PageID 207, 232.) Plaintiff testified that it was not his intention at first to spend only school nights at the Farnifold Apartment, with weekends and holidays spent at the Barry Road Residence, but that this ended

3

up being the arrangement. (Id. at PageID 233.) Plaintiff's wife spent many nights at the Farnifold Apartment in the spring of 2022. (ECF No. 17 at PageID 305.) In the fall of 2022, Plaintiff's wife spent most nights at Barry Road. (ECF No. 17 at PageID 304.)

Between May and November of 2022, Plaintiff requested updates regarding William's progress in school. (Id. ¶¶ 20–23.) Plaintiff had an IEP meeting with William's teachers when William was first enrolled at HHS. (ECF No. 16 at PageID 255.) However, he was unsatisfied with the communication that he was receiving from the school regarding William's IEP. (Id.) Plaintiff's wife was also unsatisfied with William's progress in school and believed that his IEP was not being followed. (ECF No. 17 at PageID 318–319.) Plaintiff and his wife had several meetings with William's teachers and HHS staff in the fall of 2022. (ECF No. 17 at PageID 352.) Ultimately, Plaintiff requested an IEP meeting "to address noncompliance by HHS staff with William's IEP," which meeting occurred on December 14, 2022. (ECF No. 1-1 ¶ 25.)

The GMSD BOE sent an email to Plaintiff on December 19, 2022, informing him that William had been disenrolled because he "did not reside in the Germantown City Limits." (Id. ¶ 26.) The email included a letter as an attachment that was dated December 14, 2022, and described his effective disenrollment date as December 17, 2022. (Id. ¶¶ 26–27.)

GMSD Superintendent Jason Manuel testified that the decision to disenroll William was contemplated by GMSD before November 30, 2022. (ECF No. 17 at PageID 408.) Superintendent Manuel was informed that Plaintiff and his wife were seen walking their dog near the Barry Road Residence, and that cars were parked there. (Id. at PageID 425.) On November 30, 2022, William was seen going to HHS directly from the Barry Road Residence by School Services. (Id. at PageID 386.) Superintendent Manuel then examined utility bills from the Barry Road Residence and the Farnifold Apartment, and concluded that the Wood

4

family was mainly residing at the Barry Road Residence. (Id. at PageID 391, 419–425.) Superintendent Manuel testified that he made the decision to disenroll William on December 6, 2022. (Id. at Page ID 381, 387.)

*B. Procedural Background*

This case was filed in Shelby County Chancery Court on January 13, 2023. (ECF No. 1-1.) Defendant removed the case to Federal Court on federal question grounds on that same day. (ECF No. 1.) A TRO hearing was held before the Court on January 23 and 24, 2023 at which both testimony and exhibits were received. (ECF Nos. 12, 14.) Both Parties subsequently submitted briefs to the Court. (ECF Nos. 18, 19.)

Plaintiff has filed an administrative complaint with the Tennessee Department of Education Office of the General Counsel. (ECF No. 1-1 ¶ 30.)

## II. LEGAL STANDARD

The court may grant a TRO or preliminary injunction "only if specific facts . . . clearly show that immediate and irreparable injury, loss or damage will result to the movant before the adverse party can be heard in opposition." Fed. R. Civ. P. 65(b)(1)(A); Bredesen v. Rumsfeld, No. 3:05-0640, 2005 WL 2175175, at *5 (M.D. Tenn. Sept. 7, 2005). The Court considers four factors in weighing whether to grant a TRO:

> (1) whether the movant has a strong likelihood of success on the merits, (2) whether the movant would suffer irreparable injury absent a stay, (3) whether granting the stay would cause substantial harm to others, and (4) whether the public interest would be served by granting the stay.

Ohio Republican Party v. Brunner, 543 F.3d 357, 361 (6th Cir. 2008). "These factors are not prerequisites that must be met, but are interrelated considerations that must be balanced together." Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog, 945 F.2d 150, 153 (6th Cir. 1991). "When a party seeks a preliminary injunction on the basis of a

potential constitutional violation, the likelihood of success on the merits often will be the determinative factor." Obama for Am. v. Husted, 697 F.3d 423, 436 (6th Cir. 2012) (citing Jones v. Caruso, 569 F.3d 258, 265 (6th Cir. 2009)) (quotation marks omitted). "At this stage, [the plaintiff is] not required to prove their case in full, and . . . it is ordinarily sufficient if the plaintiff has raised questions going to the merits [that are] serious, substantial, difficult, and doubtful." Beckerich v. St. Elizabeth Med. Ctr., 563 F. Supp. 3d 633, 638 (E.D. Ky. 2021) (quoting Ne. Ohio Coal. for the Homeless v. Husted, 696 F.3d 580, 591 (6th Cir. 2012)).

**III.   ANALYSIS**

   *A.   Exhaustion Requirement Under the ADA*

Individuals with disabilities have a right to a free adequate public education ("FAPE") under federal law, through the Individuals with Disabilities Act ("IDEA"). Fry v. Napoleon Cmty. Sch., 580 U.S. 154, 158 (2017); 20 U.S.C. § 1400 *et seq*. Section 504 of the Rehabilitation Act of 1973 requires a local education agency to provide a FAPE to persons with a disability within that agency's jurisdiction. 29 U.S.C. § 794. Noncompliance with a student's IEP is a deprivation of the right to a FAPE. 20 U.S.C. § 1400 *et seq*; Endrew F. v. Douglas Cnty. Sch. Dist. Re-1, 580 U.S. 386 (2017).

A plaintiff "must exhaust administrative remedies under the []IDEA[] before proceeding to the merits of claims under the ADA or Rehabilitation Act" if the crux of his case is the denial of the right to a FAPE. See G.S. by & through Schwaigert v. Lee, 558 F. Supp. 3d 601, 609 (W.D. Tenn. 2021) (citing Fry, 580 U.S. at 165). Exhaustion is a prerequisite to the consideration of the merits of Plaintiff's claims under the IDEA, the Rehabilitation Act, and 42 U.S.C. § 1983. Id; see also Franklin v. Frid, 7 F. Supp. 2d 920, 927 (W.D. Mich. 1998) (dismissing § 1983 claims without prejudice pending resolution of

administrative hearings regarding a plaintiff's IDEA claims). Plaintiff's claims can, however, "go forward if the issue [is] about *accessing* education, not about the education itself." Id. at 607 (emphasis in the original).

"The IDEA provides for two administrative procedures" for a parent who believes his child's rights under the IDEA are being violated. Long v. Dawson Springs Indep. Sch. Dist., 197 F. App'x 427, 433–34 (6th Cir. 2006). The first is "the complaint resolution procedure . . . authorized in 20 U.S.C. § 1221e-3[.]" Id. The second is a due process hearing. 20 U.S.C. § 1415(f). It is only after a party has "been aggrieved by the findings and decision made" following an impartial due process hearing that the IDEA provides for a private cause of action. 20 U.S.C. § 1415(i)(2)(A). "This requirement includes even parents who forego their IDEA claims and sue under another statute: Parents must first 'exhaust[]' the IDEA's administrative procedures 'to the same extent as would be required had the action been brought under [the IDEA]." Perez v. Sturgis Pub. Sch., 3 F. 4th 236, 240 (6th Cir. 2021). "An IDEA plaintiff cannot come to court until a state determines that the student has not been denied a free appropriate public education. Then, and only then, is a plaintiff 'aggrieved by the findings and decision rendered' and eligible to sue. 20 U.S.C. § 1415(g)(1)(i)(2)(A). But if an administrative officer has conducted no hearings, made no findings, and issued no decisions, there is nothing to be aggrieved by." Id. at 242.

The Court should ask two questions in evaluating whether the gravamen of the Complaint is William's educational experience: "could the plaintiff have brought 'essentially the same claim' against a different kind of public facility, like a public theater or library? And could an adult at the school, like an employee or a visitor, have 'pressed essentially the same grievance?'" Id. (internal citation omitted) (citing Perez, 3 F.4th at 241).

Plaintiff is required to exhaust his administrative remedies. The gravamen of Plaintiff's Complaint is the deprivation of his son's right to a FAPE and the adequacy of his son's educational experience. Id. Plaintiff "could not bring essentially the same claim against a facility that had no responsibility to educate [his son] and had no opportunity to conceal his [son's] lack of progress." Perez, 3 F.4th at 241. "Furthermore, the school would not have a similar obligation to an adult to provide necessary educational services, so an adult could not have pressed this grievance." G.S., 558 F. Supp. 3d at 310. Plaintiff testified that he is bringing the instant case because William "was not getting a free and appropriate public education." (ECF No. 16 at PageID 224.) "[P]rior pursuit of the IDEA's administrative remedies will often provide strong evidence that the substance of a plaintiff's claim concerns the denial of a FAPE." Fry, 580 U.S. at 173. Plaintiff is pursuing an administrative remedy in tandem with the instant suit. (ECF No. 1-1 ¶ 30.) Plaintiff will therefore be unable to proceed to the merits of his claims under the Rehabilitation Act and the IDEA.

A.      *Likelihood of Success on the Merits*

Plaintiff is unlikely to succeed on the merits in this case. This weighs strongly against granting a TRO.

*1. Plaintiff's Constitutional Claims are Not Viable*

Assuming Plaintiff is not required to exhaust his administrative remedies as to his claims under the United States Constitution, he is still unlikely to succeed on the merits in this case.

Plaintiff brings this suit pursuant to 42 U.S.C. § 1983, alleging violations of the federal Constitution. (ECF No. 1-1 at PageID 12.) Students have a Constitutional Due Process property interest in attending public school. See Goss v. Lopez, 419 U.S. 565, 574 (1975)

8

("[T]he State is constrained to recognize a student's legitimate entitlement to a public education as a property interest which is protected by the Due Process Clause and which may not be taken away . . . without adherence to the minimum procedures required by that Clause."). While William does not have a property interest in attending school in GMSD unless he resides within the school district, the premise of Plaintiff's challenge is that William does reside in GMSD, and the disenrollment of Plaintiff's son therefore provides Plaintiff with a basis for this suit under § 1983.  See, e.g., Winokur v. Ann Arbor Pub. Sch., 927 F.2d 606 (6th Cir. 1991).

Students may be restricted in the public schools they can attend by "[a] bona fide residence requirement, appropriately defined and uniformly applied," as such a requirement furthers a substantial state interest.  Martinez v. Bynum, 461 U.S. 321, 328 (1983). Defendant's residency requirement is an evaluation of a family's physical proximity to the school district and their intent to remain there.  (ECF No. 17 at PageID 375, 379.)  Plaintiff does not contest Defendant's interest in setting forth bona fide residency requirements, and does not contend that the GMSD BOE's residency requirements are unconstitutional.  (ECF No. 19 at PageID 462.)

The Court understands Plaintiff to be making two arguments. First, Plaintiff argues that his son's disenrollment is arbitrary and capricious.  (ECF No. 1-1 ¶ 29.)  Arbitrary and capricious state action can be a violation of Substantive Due Process.  Second, Plaintiff argues that "residence" and "domicile" are vague terms, and that the GMSD BOE has failed to properly define those terms such that "parents . . . be put on notice with regard to whether they meet those requirements."  (ECF No. 19 at PageID 462.)  The failure of a state actor to

adequately provide notice to a party before depriving them of a property right can be a violation of Procedural Due Process.

### a. Substantive Due Process

The Sixth Circuit "has recognized that a substantive due process violation occurs when arbitrary and capricious government action deprives an individual of a constitutionally protected property interest." Warren v. City of Athens, 411 F.3d 697, 707 (6th Cir. 2005). Plaintiff can only advance such a Due Process claim if Defendant's residency requirement does not rationally further a legitimate government purpose. Horn v. City of Mackinac Island, 938 F. Supp. 2d 712, 720 (W.D. Mich. 2013).

Plaintiff's arrangement clearly threatens to "reduce[] the [city] tax base." Harris v. Hall, 572 F. Supp. 1054, 1058 (E.D.N.C. 1983). Ensuring that families establish a residence in which they intend to remain also facilitates the "proper planning and operation of the schools." Martinez, 461 U.S. at 328–30. "A bona fide residence requirement simply requires that the person does establish residence before demanding the services that are restricted to residents." Id. at 328–29. Defendant's residency requirement therefore rationally furthers a legitimate government purpose and William's disenrollment cannot be considered an arbitrary and capricious government action.

### b. Procedural Due Process

Reasonable criteria for establishing residence for educational purposes are constitutional. Vlandis v. Kline, 412 U.S. 441, 453 (1973). The term "resident" appears numerous times in Tennessee laws touching on primary and secondary education. See, e.g., Tenn. Code Ann. § 49-6-3003 (a)(1) ("No tuition or fee shall be charged by any city or special school district except to pupils *residing* outside the city or district") (emphasis added). It is

apparent from the educational context that the term "resident" is properly defined as "legal resident" or "domicile." Bearman v. Camatsos, 385 S.W.2d 91, 93 (Tenn. 1964). Plaintiff testified that he understood that he was required to live in Germantown in order to send his child to a GMSD school. (ECF No. 16 at PageID 263.) A requirement that "school-age children or their parents . . . satisfy the traditional, basic residence criteria—i.e. to live in the district with a bona fide intention of remaining there—before [the school board] treat[s] them as residents" is widely used and widely understood. Martinez, 461 U.S. at 332. Plaintiff was on notice that he needed to satisfy the traditional, basic criteria of residence to be considered a resident of Germantown by the GMSD BOE.

> B. *Irreparable Harm*

Plaintiff's son is harmed in a "certain and immediate" fashion by his disenrollment from school, and that harm may be remedied by granting injunctive relief. Memphis A. Philip Randolph Inst. v. Hargett, 978 F.3d 378, 391 (6th Cir. 2020). "Every week that [William] is not receiving his . . . services is another week that [William's] educational progress is delayed and[ GMSD] cannot retroactively cure the harm caused by those missed weeks." Lofton v. D.C., 7 F. Supp. 3d 117, 124 (D.D.C. 2013). Additionally, William has a number of advantages stemming from his attendance at HHS, such as school staff training in his communication-assistance hardware. See Thomas By & Through Thomas v. Davidson Acad., 846 F. Supp. 611, 619 (M.D. Tenn. 1994) (Holding that a student's potential challenges in transitioning schools at a pivotal and difficult time in her life represented an irreparable harm); see also (ECF No. 16 at PageID 274). William is accustomed to HHS, and his mother testified that he has difficulty with transitions like a change in schools. See id; see also (ECF

11

No. 17 at PageID 301.) For these reasons, in this case there is irreparable harm to Plaintiffs, which weighs in favor of granting a TRO.

*C. Substantial Harm to Others*

> The provision of primary and secondary education, of course, is one of the most important functions of local government. Absent residence requirements, there can be little doubt that the proper planning and operation of the schools would suffer significantly. The State thus has a substantial interest in imposing bona fide residence requirements to maintain the quality of local public schools.

Martinez, 461 U.S. at 328–30. Defendant would be seriously harmed if it was prevented from maintaining its own bona fide residency requirements. Students and the local community are also harmed when the proper planning and operation of local schools is impeded. For these reasons, in this case there would be substantial harm to others if the Court were to grant a TRO. This weighs against granting a TRO.

*D. The Public Interest*

It is in the public interest to maintain the proper "planning and operation of the schools." Martinez, 461 U.S. at 328–30. Defendant advances the public interest by "upholding the rules" in a consistent fashion. See Rhodes v. Ohio High Sch. Athletic Ass'n, 939 F. Supp. 584, 592 (N.D. Ohio 1996). While the uninterrupted provision of educational opportunities to students such as William is also an important public policy, Plaintiff has alternative public educational opportunities available to him. For these reasons, granting a TRO is not in the public interest.

**IV.    CONCLUSION**

Plaintiff has failed to show that granting a TRO would be in the public interest. Granting Plaintiff a TRO would cause substantial harm to others. Most importantly, Plaintiff is unlikely to succeed on the merits in the instant case. While William may suffer irreparable harm, granting a TRO is not appropriate.

For each of the reasons set forth above, Plaintiff's Motion for a Temporary Restraining Order is **DENIED**.

**SO ORDERED**, this 30th day of January, 2023.

/s/ Jon P. McCalla
JON P. McCALLA
UNITED STATES DISTRICT JUDGE